IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In re:  
Raymond H. LaForce,  
Debtor.

Case No.: 14-2967-JCO  
Chapter 7

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a Motion for Authority and Amended Application to Enforce Property Division Provisions of Judgment of Divorce and Supporting Brief filed by Creditor Candace LaForce, (Docs. 468, 494, 653), and the Trustee's Response in Opposition thereto. (Doc. 683). A hearing was held on the Motion on August 1, 2017. Appearing before the Court was the Trustee, Lynn Harwell Andrews and counsel for the Trustee, A. Richard Maples. On behalf of Creditor Candace LaForce was attorney Irvin Grodsky. Creditor Candace LaForce was also present.

Having considered the record before it, the pleadings and Motion presented at the hearing, as well as the arguments of the parties, this Court orally found that Creditor Candace Laforce's Motion for Authority was due to be GRANTED. So as not to delay her enforcement of the Judgment of Divorce while this Court drafted the memorandum opinion herein, an interim Order granting the Motion was entered in the record of this case. This Court further finds as follows.

## FACTUAL AND PROCEDURAL HISTORY

Debtor Raymond LaForce (hereinafter "Husband" or "Debtor") and Creditor Candace LaForce (hereinafter "Wife") were married for approximately 27 years, until September 22, 2011, when Wife filed for divorce in the Mobile County Circuit Court (hereinafter "Domestic Relations Court"). On the date of the divorce filing, Wife and Debtor owned personal and real

property that was acquired after the marriage, which is classified under Alabama law as marital property. This property makes up the marital estate. On the date of the divorce filing, most of the personal property and real property were titled in Debtor's name only. The Divorce Complaint requested an equitable division of the property in the marital estate.

On September 23, 2011, the Domestic Relations Court entered a pretrial order requiring the Wife and Debtor to maintain the status quo of their household bills and to refrain from disposing of any savings accounts, household furnishings or other assets of the marital estate. (Doc. 653 at 20). On March 27, 2014, the Domestic Relations Court entered an order awarding Wife "immediate possession of the Ferrari pending the hearing." (Doc. 653 at 21).

On September 11, 2014, Debtor filed an individual Chapter 11 petition seeking bankruptcy protection.[1] Wife is not a co-debtor in the bankruptcy and has not filed a separate bankruptcy proceeding.

The divorce trial was scheduled and then continued multiple times. The divorce was set again for trial on December 17, 2014. On the day of trial, the case was called and Wife appeared and was represented by counsel. (Doc. 653 at 22). Debtor appeared *pro se*. (Doc. 653 at 22). After calling the case, the Domestic Relations Court entered an order granting the Debtor a final continuance. In the order, the Domestic Relations Court chastised the Debtor for his delay and held the Wife had an equitable interest in all assets and may have an equitable responsibility for some debt included in the marital estate. (*Id.*). The Domestic Relations Court cautioned that the trial would be reset only once more for Debtor to retain counsel, and, once counsel was retained, trial preparations must begin immediately with no delay in discovery despite having new counsel. (*Id.* at 23).

---

[1] On January 24, 2017, after notice and a hearing, Debtor's case was converted to Chapter 7.

On February 6, 2015, this Court granted relief from stay to authorize the Domestic Relations Court to adjudicate the divorce proceeding and to enter a final Judgment of Divorce determining all marital issues, including a division of marital property of the parties, subject to the Bankruptcy Court retaining jurisdiction over the enforcement of said Judgment to the extent that it affected the Debtor's bankruptcy estate. (Doc. 167).

On January 20, 2016, the Domestic Relations Court entered a Judgment of Divorce granting the parties a divorce, ordered a division of the marital property, awarded alimony, and divided the obligations for certain debts of the marriage. (Doc. 653 at 24-26).

The Judgment of Divorce equitably divided the marital estate consisting of real and personal property acquired after the date of marriage, as follows:

1. Awarded to Wife is the marital home located at 6373 Muirwood Drive, subject to the indebtedness on the home, the contents of the marital home, a painting titled "Woman in Red Dress," two vehicles, i.e., a 2002 Mercedes SLK and a 2008 Ferrari F430, the Debtor/Husband's interest held in the name of Debtor/Husband in a leased 2013 Porsche, a boat described as a 26' Regulator, 25% of the shares of stock of Raymond and Associates, subject to payment of certain debts, and 40% of Debtor/Husband's net BP settlement claim, after payment of creditors.
2. Awarded to Debtor/Husband his interest in the Fowl River house in which he resided at the time and the contents therein, all interest in the Walker Key condominium and the contents therein, an indebtedness of $10,105.00, which was due for the Walker Key condo, a semicircle leather sofa, 2003 Harley Softtail, 2015 Lexus GS 350, 56'Hatteras, 2009 Skeeter boat, two Yamaha jet skis, proceeds from the Nissan GTR, 2014 Hayabusa, all other vehicles, 75% of the shares of stock held in the name of Debtor/Husband in Raymond and Associates, 60% of Debtor/Husband's net BP settlement, after payment of creditors, six acres on Shell Belt Road in Bayou La Batre, Alabama, and all interests in Savory, Inc.

On April 7, 2016, the Judgment of Divorce was amended by the Domestic Relations Court to include a stereo and four pinball machines, as well as to address the forthcoming BP claim. (Doc. 653 at 27). Under the Judgment of Divorce, Debtor/Husband received 61% and Wife received 39% of the marital estate property based upon the values assigned to the assets

by the Domestic Relations Court. Debtor appealed the Judgment and the Alabama Court of Civil Appeals affirmed without issuing an opinion. (Doc. 653 at 28).

CONCLUSIONS OF LAW

The timing of the divorce and bankruptcy create the questions that are before this Court today. Did the pre-petition filing of the divorce action create a constructive trust for Wife's benefit, and does that constructive trust prevent the marital estate assets from entering the bankruptcy estate? This is one of the classic dilemmas of bankruptcy jurisprudence-- which deserving class of creditors should receive the benefit of a debtor's limited assets to satisfy its claims against the debtor to the detriment of other deserving classes of creditors.

Interplay Between §§ 541(a) and (d)

The commencement of a bankruptcy case creates an estate comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). The reach of Section 541(a) is vast, but not limitless. Section 541(d) helps define those limits, "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold. § 541(d). Section 541 does not "specify what is or what is not 'an interest of the debtor in property,' so that one may determine the composition of a debtor's estate." *In re Poffenbarger,* 281 B.R. 379 (Bankr. S.D. Al. 2002). Thus, the interplay between subsections (a) and (d) is not always easily reconciled. "When property held in the possession of a debtor is alleged to be held in trust by the debtor for a nondebtor, and therefore not estate property under subsection 541(a)(1) or (2), the

burden rests upon the entity seeking to exclude the property from the estate to establish the existence of the [trust]." 5-541 Collier on Bankruptcy P 541.28 (16th 2017). "That entity must prove title and identify the trust fund or property and, where the fund or property has been commingled with the general property of the debtor, must sufficiently trace the property." *Id.* "When the existence of a prepetition constructive trust is established, the assets subject to the trust will typically be found . . . *not* to be property of the estate." *Id.* (emphasis in original).

Constructive Trust Property is Not Property of the Estate

A constructive trust is the formula through which the conscience of equity finds expression." *Davis v. Barnfield,* 833 So.2d 58, 64 (Ala. Civ. App. 2002). State law determines when/whether property is held by a bankrupt debtor in constructive trust for anther. *In re Poffenbarger,* 281 B.R. 379, 388 n. 6 (Bankr. S.D. Ala. 2002)(*citing In re Southmark Corp.,* 49 F.3d 1111, 1118 (5th Cir. 1995); *In re Gen. Coffee Corp.,* 828 F.2d 699, 701–04 (11th Cir.1987), *cert. denied,* 485 U.S. 1007, (1988); *In re Oster,* 261 B.R. 599, 601–02 (Bankr. M.D. Pa. 2000)). Here, that is Alabama state law—more specifically, Section 30-2-51 of the Alabama Code, which is discussed in more detail below.

In *Sledge v. Sledge*, the Alabama Court of Civil Appeals defined and analyzed the creation of a "constructive trust" as follows:

> A constructive trust is a creature of equity that operates to prevent unjust enrichment; such a trust will be imposed when a property interest has either been acquired by fraud or where, in the absence of fraud, it would be inequitable to allow the property interest to be retained by the person who holds it.

*Sledge v. Sledge,* 630 So.2d 461, 464 (Ala. Civ. App. 1993) (emphasis added) (quoting *Coupounas v. Morad,* 380 So.2d 800, 803 (Ala. 1980)); *Holley v. Holley,* 660 So.2d 608, 610 Ala.Civ.App. 1995).

Equity may also impress a constructive trust on property in favor of one beneficially entitled thereto against a person, who, against the rules of equity and against good conscience, in any way either has obtained or holds and enjoins legal title to property that in justice that person ought not to hold and enjoy. *Poffenbarger* at 388 (*citing Sledge* at 464).

The doctrine of constructive trust does not create a stand-alone cause of action, but is a remedy that can be imposed where there is some ground upon which equity will grant relief. *In re Book,* 2013 WL 5300694, at *2 (Bankr. N.D. Ohio Sept. 17, 2013). "Under Alabama law, it is unnecessary that there be the presence of fraud, wrongdoing, abuse of a confidential relationship, or other unconscionable conduct in order for a constructive trust to arise." *Poffenbarger* at 388 (*citing Brown* at 369–370). "Essentially, then, a constructive trust may arise when property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest." *Id.* (*citing Brown* at 370). "In such an instance, equity converts the holder of legal title into a trustee." *Id.*

"A court need not declare that a constructive trust has been created, but rather such a trust arises by operation of law to prevent unjust enrichment." *In re Book,* 2013 WL 5300694, at *2. "Divorce actions are prime examples wherein domestic relations courts make a division of property where legal title may be vested in one spouse but the court awards a beneficial interest to the other spouse." *Id.* In these situations, another court, like a bankruptcy court, can equitably label the interest as falling within a constructive trust by operation of law. *Id.*

<u>The Creation of the Constructive Trust</u>

In the trial of a divorce proceeding, Alabama courts are required to make an equitable distribution of marital property between the parties regardless of how title is held to those properties as of the date of the divorce filing. *Peck v. Peck*, 581 So.2d 1119, 1122 (Ala. Civ.

6
Case 14-02967   Doc 697   Filed 09/06/17   Entered 09/06/17 16:48:43   Desc Main
Document      Page 6 of 11

App. 1991); Ala. Code. § 30-2-51 (stating that domestic relations courts may use discretion in ordering a spouse an allowance out of the marital estate if either spouse has no separate estate or if it is insufficient for the maintenance of a spouse, i.e., alimony).

The purpose of alimony is to preserve, insofar as possible, the economic status quo of the parties as it existed during the marriage. *Matter of Hughes,* 16 B.R. 90, 92 (Bankr. N.D. Al. 1981). Domestic relations courts are courts of equity, and thus, "[p]roperty divisions are not required to be equal, but must be equitable in light of the evidence, and the determination as to what is equitable rests within the sound discretion of the trial court." *Summers v. Summers,* 58 So.3d 184, 189 (Ala. Civ. App. 2010).

As a matter of equity, domestic relations courts have the power to adjust the ownership of property held by joint tenants who are parties to a divorce. *Porter v. Porter,* 471 So.2d 630, 633 (Ala. 1985). Thus, a domestic relations court may award a wife real property that was titled only in the husband's name without abusing its discretion. *Hackney v. Hackney,* 794 So.2d 1159, 1165 (Ala. Civ. App. 2001).

That is exactly what happened in the case at hand. When Wife filed for divorce, equity converted the Debtor from the holder of legal title to the marital assets into a trustee of the marital assets until the divorce could be finally resolved. Accordingly, this Court finds that the filing of the divorce proceeding created a constructive trust in the marital estate in favor of Wife pending a final divorce decree.

The question remains, though, when Debtor filed for bankruptcy relief, did his entire marital estate, including the inchoate property interests equitably belonging to Wife, fall into the bankruptcy estate, or does the existence of the constructive trust prevent the Wife's equitable interests from entering the bankruptcy estate? Given the most recent amendments to the

Bankruptcy Code, this Court finds the latter to be correct—that property held by a debtor in trust for another does not enter the bankruptcy estate upon commencement of a bankruptcy case.

Post-BAPCPA Priority Scheme

In 2005, Congress significantly amended the Bankruptcy Code through the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). Prior to the 2005 amendments, bankruptcy courts had historically disfavored imposing constructive trusts on assets that otherwise would be estate property. S*ee In re DC Energy, LLC,* 555 B.R. 786, 790-92 (Bankr. D.N.M. 2016)(collecting cases); *see also In re Golden,* 2004 Bankr. LEXIS 1171 (Bankr. M.D. Ala. 2004). This was because constructive trusts disrupt the Bankruptcy Code's distribution scheme and favor the trust claimant at the expense of other creditors. *In re D.C. Energy,* 555 B.R. at 792. However, in the wake of BAPCPA, this Court declines to follow the prohibition on the creation of a constructive trust where a divorce case is filed prior to a bankruptcy filing.

The Eleventh Circuit set out several of the general objectives considered by Congress when it amended the Code in 2005:

> 1. Bankruptcy should interfere as little as possible with the establishment and collection of on-going obligations for support, as allowed in State family law courts.
> 2. The Bankruptcy Code should provide a broad and comprehensive definition of support, which should then receive favored treatment in the bankruptcy process.
> 3. The bankruptcy process should insure the continued payment of ongoing support and support arrearages with minimal need for participation in the process by support creditors.
> 4. The bankruptcy process should be structured to allow a debtor to liquidate nondischargeable debt to the greatest extent possible within the context of a bankruptcy case and emerge from the process with the freshest start feasible.
> 146 Cong. Rec. S11683–02 (daily ed. Dec. 7, 2000) (statement by Sen. Grassley).

*In re Gonzalez*, 832 F.3d 1251, 1254 (11th Cir. 2016), *cert. denied sub nom. Florida Dep't of Revenue v. Gonzalez*, No. 16-1013, 2017 WL 683663 (U.S. June 26, 2017).

The 2005 amendments established domestic support obligations as the highest priority for distribution in bankruptcy cases. Prior to enactment of these amendments, "bankruptcy administrative expenses were accorded the highest priority and domestic support obligations were granted seventh priority." 4-507 Collier on Bankruptcy P 507.02 (16th 2017). "The creation of this higher priority for domestic support obligations was . . . designed to enhance the status of domestic support obligations in bankruptcy cases and to prevent what Congress believed to be abuses of the bankruptcy process with respect to domestic support obligations." *Id.* The series of domestic support amendments mark a clear congressional intent that domestic support obligations be considered paramount in bankruptcy cases. *Id.*

This Court finds that the Judgment of Divorce is a domestic support obligation within the meaning of the Code,[2] and is thus entitled to the most favorable treatment and paramount consideration when it comes to determining what constitutes Debtor's estate.

### 11 U.S.C. § 544(a) Trustee's Avoidance Powers

---

[2] The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any provision under this title, that is,
(A) owed to or recoverable by—
(i) a spouse, former spouse, or child of the debtor ...
(B) in the nature of alimony, maintenance, or support ... of such spouse, former spouse, or child of the debtor ... without regard to whether such debt is expressly so designated;
(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
(i) a separate agreement, divorce decree, or property settlement agreement;
*(ii) an order of a court of record ...*
(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.
11 U.S.C. § 101(14A)(emphasis added).

Generally speaking, Section 544(a) is known as the "strong arm " clause and confers upon the bankruptcy trustee three different hypothetical roles: a judgment creditor with a judicial lien on all the debtor's property as of the date of the petition; an unsatisfied execution creditor, and a bona fide purchaser of real property. It permits a trustee to avoid secret liens against property in the debtor's possession. *In re General Coffee Corp.,* 828 F.2d 699, 704 (11th Cir. 1987). The trustee's rights in each of these three roles are determined by applicable state law. *In re Poffenbarger* at 394.

Sections 541(d) and 544(a) are often in conflict "because Section 541(d) excludes certain equitable interests from the estate of a bankrupt while Section 544(a) permits the trustee to bring certain tainted property into the control of the estate." *In re General Coffee Corp.,* 828 F.2d at 704. Some courts hold that § 541(d) prevails over the trustee's strong arm powers under Section 544(a) reasoning that "although Section 544(a)'s strong arm powers allow a trustee to assert rights that the debtor could not claim to property, Congress did not mean to authorize a bankruptcy estate to benefit from property that the debtor did not own." *Id.* at 705. This is the minority view. *See also* 5-544 Collier on Bankruptcy P 544.02 n. 32 (16th 2017).

Other courts have rejected this approach and held that the two statutes operate independently allowing property that is not property of the estate under Section 541(d) to come into the estate under Section 544(a) on the ground that it is consistent with the "letter and with the spirit of the Bankruptcy Code." *Id.* This is the majority view.[3] *See also* 5-544 Collier on Bankruptcy P 544.02 n. 30 (16th 2017).

---

[3] Under the majority view, other courts have held that a hypothetical judgment lien creditor, an execution creditor or bona fide purchaser of real property would have priority over a beneficiary of a constructive trust with regard to the trust's assets. However, in *General Coffee, infra,* the Eleventh Circuit concluded (in the absence of any precedential Florida law) that a constructive trust beneficiary clearly has priority to trust assets over a judicial lienholder,

In keeping with the intent of Congress, which was set out so clearly by the priority scheme delineated in BAPCPA, this Court adopts the minority view and declines to extend the majority view. Applying the minority view, Wife' equitable interest in the marital estate property would not come into Debtor's bankruptcy estate. Since the marital assets are held in a constructive trust for Wife's benefit, the bankruptcy estate "succeeds only to the title and rights in the property that the debtor possessed . . . therefore . . . the [bankruptcy] estate will generally hold such property subject to the outstanding interest of the beneficiaries. *Poffenbarger* at 394 (*citing Georgia Pacific Corp. v. Sigma Service Corp.,* 712 F.2d 962 (5th Cir. 1983)). Having adopted the minority view, this Court holds Section 541(d) controls and thus prevents Wife's interest in the marital estate from ever entering the bankruptcy estate.

## CONCLUSION

For the foregoing reasons, this Court finds that Wife's Motion for Authority is due to be and hereby is GRANTED. This Order is in support of the Interim Order entered by this Court on August 4, 2017. (Doc. 686). This Order hereby makes final the Interim Order.

Dated: September 6, 2017

JERRY C. OLDSHUE, JR.
U.S. BANKRUPTCY JUDGE

---

execution creditor or bona fide purchaser of real property. *Collier on Bankruptcy* supports this conclusion by stating that where there is a divorce decree, a pending divorce proceeding, or a lis pendens so that constructive notice is given as to such, a trustee is precluded from successfully using her § 544(a) avoidance powers because no creditor exists that that would be able to avoid the interest under applicable nonbankruptcy law. *See* 5-544 Collier on Bankruptcy P 544.02 (16th 2017). In light of the 2005 amendments set forth in BAPCPA, this Court concludes that the majority view is out of line with the new priority scheme and declines to adopt it.