UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

In re:

**RAYMOND LAFORCE**            CASE NO. 14-02967-JCO-7

Debtor

_____/

**U. S. BANKRUPTCY ADMINISTRATOR
FOR THE SOUTHERN DISTRICT OF
ALABAMA,**

Plaintiff

v.                                             AP No. 17-00101

**RAYMOND LAFORCE**,

Defendant

## MEMORANDUM OPINION AND ORDER AND JUDGMENT DENYING DEBTOR A DISCHARGE

This matter having come before the Court on the Motion For Summary Judgment, pursuant to FRBP 7056 and FRCP 56, and Narrative Summary of Undisputed Facts and Brief (doc. 11, 12) filed by Mark S. Zimlich, Bankruptcy Administrator for the Southern District of Alabama, and notice having been given, and a hearing held on September 18, 2018, and W. Alexander Gray Jr. having appeared for the U.S. Bankruptcy Administrator, and the Debtor, *pro se*, having not appeared, nor filing any objection or response to the Motion for Summary Judgment, and the Court having reviewed the Motion, Narrative Summary and Brief, Affidavit of Lynn Andrews and exhibits thereto, and other matters of record, and having made findings of fact and conclusions of law as set forth herein, the Court holds that the Motion for Summary Judgment (doc. 11) is due to be and is hereby GRANTED, and grants judgment, as set forth

herein, denying Debtor a discharge in this case pursuant to 11 U.S.C. § 727(a)(6) and 727(d)(2-3).

## JURISDICTION

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334 and 157, and the order of reference of the District Court dated August 25, 2015. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J), and the Court has authority to enter a final order.

### I. FINDINGS OF FACT

**A. Debtor's Bankruptcy Case, Conversion, Conversion Schedules, and 341 Meeting**

1. The Defendant Raymond Laforce, is an individual over the age of 19 years, who resides in this District.

2. This case was originally filed as a Chapter 11 case on September 11, 2014, and was converted to a Chapter 7 case on January 26, 2017. Conversion schedules were due to be filed within 14 days of the order of conversion. The conversion schedules are "new schedules of assets and liabilities [and a] statement of financial affairs." (doc. 489)("doc." references are to the main case; "AP doc." refers to this adversary proceeding). The practice is this District is for the conversion schedules to "update" the original schedules and show the debtor's assets, liabilities and other financial information as of the conversion date. (Affidavit of Lynn Andrews, ¶ 2 (hereinafter referred to as "Andrews Aff.").

3. On February 15, 2017, a notice went to creditors setting the 341 meeting of creditors on March 13, 2017, and setting the time to file complaints against discharge on May 12, 2017.

4. The Debtor failed to file conversion schedules within the time ordered. Partial schedules, only A, B, and D were filed (on the incorrect forms) on April 24, 2017. A more complete set of conversion schedules were filed on July 20, 21, 2017 (again on incorrect forms)(doc. 658-670). Amended conversion schedules, on the correct forms, were again filed on August 21, 2017 (doc. 691-92). An amended schedule A/B was filed on September 18, 2017 (doc. 701). The last set of conversion schedules was filed on November 22, 2017 (doc. 738). Although the last set of conversion schedules contain the electronic signature of the Debtor, counsel for the Debtor at the time, Willis Garrett, represented to the BA and the Trustee that he had been unable to get the Debtor to review and sign the conversion schedules, and, in fact, the Debtor has not signed the last set of conversion schedules filed with the Court. (Andrews Aff. ¶ 4).

5. During this same period the 341 meeting of creditors was reset eleven (11) times, with the last setting being January 29, 2017 (docs. 543, 567, 593, 627, 640, 693, 704, 711, 727, 746, 756). The Debtor first appeared for a scheduled 341 meeting on July 24, 2017. After this meeting, the 341 was adjourned, and the Debtor was expressly told to attend the next scheduled 341 meeting. The Debtor was not present at the August 31, 2017 date, a continuance was requested and granted for the September 18, 2017 date, and the Debtor attended on the October 16, 2017 date. Again, on that date, further amendments were requested, and the Debtor was expressly told to attend the next scheduled 341 meeting for further examination on the requested amended conversion schedules. Debtor failed to appear for the next four (4) scheduled 341 meetings. Counsel for Debtor attended on those dates. Based on this, the Trustee and BA concluded the 341 meeting of creditors on January 31, 2018 (doc. 775). Debtor's Counsel subsequently filed a motion to

3

withdraw (doc. 770), which was granted on February 6, 2018 (doc. 789).

6. During this time period, a Motion to Compel filing of the conversion schedules and attendance at the 341 meeting was filed, and granted (docs. 544, 595), followed by a Motion for Sanctions when the conversion schedules were not filed and the debtor did not attend the scheduled 341 meeting (doc. 624). The Motion for Sanctions was withdrawn by the BA on February 6, 2018 (doc.790), due to the apparent futility of pursuing sanctions against the Debtor.

B. <u>Debtor's Receipt of Monies From R & D Investments, LLC</u>

7. In December 2016, while his chapter 11 case was still proceeding, the Debtor received a check dated December 20, 2016, payable to "Raymond Laforce," in the amount of $254,690.79 (Andrews Aff. ¶ 7; Ex. 1). The payor was R & D Oilfield Services, LLC, an entity in which R & D Investments, LLC, was a member, and the latter an entity in which Debtor was a member. It appears the Debtor cashed this check on December 21, 2017 and received the proceeds therefrom in cash. (Affidavit of Lynn H. Andrews, Ex. 2). On or about January 19, 2017, Debtor apparently used a portion of this cash to purchase a cashier's check from Wells Fargo Bank, in the amount of $154,683.29 (Andrews Aff. ¶ 7; Ex. 3).

8. A motion to convert Debtor's chapter 11 to a chapter 7 proceeding was filed by Wells Fargo Bank on January 11, 2017 (doc. 471). On the same day, the Debtor filed a motion to dismiss his chapter 11 case (doc. 473). The Court granted Wells Fargo's motion to convert by Order dated January 26, 2017, and Lynn H. Andrews was appointed as Trustee (doc. 489).

4

9. On February 19, 2017, the Debtor was arrested in Maitland, Florida, and was found in possession of cash in the amount of $99,280.01. The Trustee has subsequently recovered the cash proceeds of $99,280.01. (Andrews Aff. ¶ 9)

10. The Trustee filed a Motion for Turnover with respect to the R & D monies on March 16, 2017 (doc. 547). That motion is still pending, and Debtor has not turned over the balance of the R & D monies to the Trustee. (Andrews Aff. ¶ 10).

11. When the Debtor did attend his 341 meeting on July 24, 2017, the Debtor provided contradictory information to that contained in the schedules, and was unable to verify information regarding his assets and liabilities. The Debtor also purported to invoke the 5th amendment privilege against self-incrimination regarding, specifically, the R & D monies. (Andrews Aff. ¶ 11). On the initial conversion schedules filed (doc. 669), these monies were not listed as an asset on Schedule B, either as cash or money in a deposit account. The monies were not shown on the Statement of Financial Affairs, where income for the current year and the prior two years before that is required to be shown (doc. 670)(the Statement of Financial Affairs showed income for 2012-2014, which was the original amount on the 2014 chapter 11 filing; this is one of the items for which an amendment was demanded, as will be discussed below). Debtor was instructed to file amended conversion schedules containing complete and accurate information concerning his assets and liabilities, and to appear again for further examination on August 21, 2107. After two more adjournments, the Debtor reappeared for the adjourned 341 meeting on October 16, 2017. Although amended schedules A & B had been filed (doc. 701, 706), the Debtor indicated he had not reviewed the amended schedules, and

5

he appeared to state that said schedules, and previously filed schedules and Statement of Financial Affairs, were incomplete and/or inaccurate. (Andrews Aff. ¶ 11). Debtor was instructed to file a complete and signed set of conversion schedules and related documents, with a deadline of November 6, 2017. Although these amended schedules were filed on November 22, 2017, as previously set forth they were not signed by the Debtor, and Debtor never attended the subsequent four (4) adjourned 341's for examination on these amended conversion schedules (Andrews Aff. ¶ 11).

12. On the final set of amended conversion schedules, filed on November 22, 2017 (doc. 738, Andrews Aff. Ex. 4) the Debtor did not list any cash, or monies in a deposit account (doc. 738, Sch. B, ##16, 17), did not list any income received, from any source, during 2017 (SFA ##4, 5), and did not list any gifts, thefts of money (although some items of personal property were listed) or other transfers, prior to the conversion date of January 26, 2018 (SFA ##13, 15, 18). Although the Debtor had purported to invoke the 5th Amendment privilege against self-incrimination when questioned about the receipt, and disbursement/location of the R &D monies, the 5th amendment privilege was not invoked in writing in response to any question in the schedules and Statement of Financial Affairs.

**C. Debtor Has Also Failed to List, Account For, or Turnover Other Personal Property**

13. Debtor has failed to account for numerous items of personal property, including a 2011 Lexus, a 2002 GMC truck, and a 2012 Suzuki motorcycle, a 2009 Skeeter boat and motor, and watches and jewelry, and several firearms. The Trustee determined that

6

Case 14-02967    Doc 825    Filed 10/31/18    Entered 10/31/18 14:09:18    Desc Main
Document    Page 6 of 15

Debtor owned a 2011 Lexus, but this vehicle was not listed in the conversion schedules and Debtor has not accounted for the disposition of the car. While a 2002 GMC truck is listed on the conversion schedules, Debtor has not accounted for its location or turned it over to the Trustee. Several guns were listed, and Debtor testified about a Rolex watch he owned, but not have been recovered or turned over. (Andrews Aff. ¶ 15). At his 341 meetings, Debtor has offered vague allegations of theft of some of these items, or indicated they have been lost or otherwise sold, without providing any details either in his testimony or his conversion schedules, and has failed to provide any documentation regarding these items. The Statement of Financial Affairs listed a theft of two pistols and a Rolex watch, but did not provide details, nor did the Debtor provide any in his testimony at the 341 meetings. (Andrews Aff. ¶ 15). The Trustee has filed a second Motion for Turnover with respect to this property, on October 2, 2017 (doc. 707).

## II. CONCLUSIONS OF LAW

### A. Summary and Standard of Review

The BA seeks a denial of a discharge to the Debtor based on his acts and omissions subsequent to the conversion of his chapter 11 case, including: 1) his failure to comply with the Code requirements for providing complete and accurate conversion schedules and attending his 341 meetings; 2) failing to comply with a Court order compelling the Debtor to perform these requirements; and 3) failing to turnover property that comprises property of his bankruptcy estate. Debtor has failed to do in this case.

"Summary judgment is appropriate if the evidence before the court shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In making this determination, the court must view all evidence and make all reasonable

7

Case 14-02967    Doc 825    Filed 10/31/18    Entered 10/31/18 14:09:18    Desc Main
Document      Page 7 of 15

inferences in favor of the party opposing summary judgment. The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *See, e.g., Chapman v. AI Transport, et. al*, 229 F.3d 1012,1023 (11th Cir. 2000). In this case, and for the purposes of this motion, the Court finds that there are no disputed issues of material fact, and the BA is entitled to judgment as a matter of law.

### B. The Post-Conversion Grounds for Denial of Debtor's Discharge.

Although the time to file a complaint objecting to discharge expired on May 12, 2017, the BA filed, pursuant to Bankruptcy Rule 4004(b)(2), a motion to extend the time to file such complaint. This motion was granted on August 31, 2017, and the BA was granted additional time, to October 27, 2017, to file a complaint objecting to Debtor's discharge. (Doc. 695).

This Complaint to Deny Discharge was filed because Debtor failed to comply with the Code requirements regarding his conversion schedules and 341 attendance, and failed to comply with a Court order compelling him to do so. In addition, Debtor has failed to account for property of the estate, including several items of personal property, and most significantly, approximately $154,000.00 that Debtor received immediately before the conversion of this chapter 11 case. Although Debtor had numerous opportunities over a period of almost a year to comply with these requirements, and turnover property of the estate, he has failed to do so. As a consequence, Debtor should not receive a discharge in this case.

For events occurring during an ongoing bankruptcy case (as opposed to pre-petition events), the Code provides a mechanism to seek denial of a discharge after the standard time for

8

filing a nondischargeability complaint has run. Bankruptcy Rule 4004(b)(2) allows such a complaint to be filed after the initial deadline for filing has run "…if…based on facts that, if learned after discharge would provide a basis for revocation under §727(d)…." *Bankr R.* 4004(d)(2).

Section 727(d), in turn, states that among the grounds for seeking denial of a discharge:

> …(2) the debtor acquired property that is property of the estate…and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, **or to deliver and surrender such property to the trustee**;
> (3) the debtor committed an act specified in subsection (a)(6) [of §727]

11 U.S.C. §727(d)(emphasis added). Section 727(a)(6), in turn, provides that the debtor may be denied a discharge if "the debtor has refused, in the case- (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify."

In this case, the Debtor's failures to provide complete, signed conversion schedules and to attend his 341 meetings, after being ordered to do so by the Court, constitute grounds for denial of discharge under §727(a)(6). Further, Debtor's failure to report the acquisition of the R & D monies in his conversion schedules, and to deliver those monies, as well as other items of personal property, are grounds for denial of discharge under §727(d)(2).

**C.  The R & D Monies**

As previously set forth, on December 21, 2016, while Debtor was still a debtor-in-possession under his chapter 11 case, he received a check in the amount of $254,690.79 from an LLC in which he had a membership interest (hereinafter the "R & D monies"). His chapter 11

9

Case 14-02967    Doc 825    Filed 10/31/18    Entered 10/31/18 14:09:18    Desc Main
Document      Page 9 of 15

was converted a month later on January 26, 2017.

Any monies received by the Debtor during his chapter 11 case are, upon conversion of the case to chapter 7, property of Debtor's chapter 7 case. *See* 11 U.S.C. §541(a)(6)("proceeds, product, offspring, rents, or profits of or from property of the estate"); 11 U.S.C. §1115(a)(1)(in an individual chapter 11, estate includes property acquired after commencement of case, but before conversion); *In re Freeman*, 527 B.R. 780, 794 (Bankr. N.D. Ga. 2015)("…this court holds that property acquired by the estate under section 1115 and section 541(a)(7) remains estate property upon conversion of a case from chapter 11 to chapter 7…").

A month after the conversion of his case, the Debtor was arrested in Florida, and at that time had in his possession $99,280.01 in cash. The Trustee subsequently discovered the Debtor had obtained, on January 19, 2017, a cashier's check for $154,683.29, which the Trustee contends is the balance of the R & D monies received by the Debtor in December (there is a difference of $727). The Debtor is also involved in a related corporate bankruptcy case, *In re Raymond & Associates*, LLC, 15-01883, which has been converted from chapter 11 to a chapter 7 case, and there is a pending adversary proceeding involving the trustees in the Debtor's individual case and the corporate case as to claims regarding which estate all or part of the R&D monies belongs to. At this time, this Court makes no findings herein as to the respective rights of the trustees to the R&D monies.

Nevertheless, the R & D monies undisputedly received by the Debtor should have been accounted for in the conversion schedules, which reflect a conversion date of January 26, 2017. The requirement of conversion schedules, in this District, is to provide updated information on the Debtor's assets, liabilities, and other information as of the conversion date. (Andrews Aff. ¶2).

The conversion schedules were supposed to be filed by February 9, 2017; the first set, which were incomplete and on improper forms, were not filed until April 24, 2017; a more complete set of conversion schedules were filed on July 20, 2017. Because Debtor testified in August (the first time he attended a 341 meeting) that he had not reviewed these initial sets of conversion schedules, he was ordered to prepare, sign and file complete conversion schedules. Debtor's counsel attempted to prepare such amended conversion schedules, but the last two versions were still incomplete and unsigned due to Debtor's failure to cooperate with his counsel in filing the conversion schedules. The last two versions were filed in September and November 2017, respectively.

In none of these conversion schedules did Debtor indicate that he had received the R&D monies, that he had spent or otherwise disposed of the monies in any fashion, whether by transfer, gift, or even theft, and, after almost a year, he has failed to turnover any of the remaining monies to the Trustee. Specifically, Debtor did not list (as of the conversion date, January 26, 2017) any cash or deposits, even though he had obtained the $154,683.29 cashier's check on January 19, 2017. (Andrews Aff. Ex. 4, Sch. B ##16,17). The Debtor received the $254,690.79 of R&D monies in late December 2016, and should have listed such as income for 2016 as required by the Statement of Financial Affairs #4,#5. Instead, the only income shown for 2016 was $120,000.00, which, as represented by Debtor's counsel, was income received by Debtor from his business, Raymond & Associates, which is also in bankruptcy (Debtor received $10,000 per month from the business during its chapter 11 case). If the Debtor gifted any of the R&D monies to another, that should have been listed on question #13 of the Statement of Financial Affairs, but nothing is shown; and if any of the monies were stolen, that should have been listed on Statement of Financial

11

Affairs #15. Despite being afforded numerous opportunities over the course of a year to do so, Debtor never accounted for all or any portion of the R&D monies in his conversion schedules. When asked at his 341 meetings about the R&D monies, debtor invoked his 5th Amendment right against self-incrimination, and refused to answer questions about the receipt, location, or disposition of the R&D monies.

### D. The Fifth Amendment Issue

Under the Fifth Amendment to the United States Constitution, "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const.Amend. V. That privilege can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory. *In re Connelly*, 59 B.R. 421, 430 (Bankr. N.D. Ill. 1986). However, "a debtor may not turn the shield of the Fifth Amendment into a sword to cut his way to a discharge while carrying his property with him. His case will be dismissed, rather than permit that." *Connelly*, 59 B.R. at 448. Under the Bankruptcy Code, Section 727(a)(6)(B) provides 5th Amendment protection to a debtor who properly invokes such protection, unless the debtor has been granted immunity. If the Debtor has been granted immunity, then he may not assert his constitutional right to silence and doing so can be grounds for denial of a discharge. 11 U.S.C. § 727(a)(6)(B); *Connelly,* 59 B.R. at 429 n.11. "[F]ull disclosure of all relevant information has always been an important policy of the bankruptcy laws." *Connelly*, 59 B.R. at 430 (*citing* A. Kurland, *Debtors' Prism: Immunity for Bankrupts under the Bankruptcy Reform Act of 1978,* 55 Am.Bankr.L.J. 177, 179 (Part I Spring 1981)). Therefore, when a debtor does assert his constitutional right to "refuse to testify for fear of self-incrimination, the bankruptcy court's ability to effect a thorough and equitable adjudication is jeopardized." *Id.* As such,

blanket assertions of the 5th Amendment are insufficient for a debtor to remain silent. Such blanket assertions can delay or even entirely prevent the administration of a debtor's estate. For application of the 5th to be proper in this context, each assertion of it must be accompanied by a demonstration of real and appreciable danger of self-incrimination. "Generally, . . .reasonable cause to apprehend danger of self-incrimination from direct answers to the specific questions posed" must be demonstrated, and such lack of [] specificity [] renders debtor's blanket assertion deficient. *Connelly,* at 434 (*citing Hoffman v. United States,* 341 U.S. 479, 486 (1951). Moreover, "[i]t is well established that 'disclosure of a fact waives the privilege as to details.'" *Connelly* at 435 (*citing In Re Corrugated Container Antitrust Litigation,* 661 F.2d 1145 (7th Cir.1981) *aff'd* 459 U.S. 248, (1983).

Because the Debtor was obligated to initially and specifically assert the 5th in response to the written questions set forth in the schedules and Statement of Financial Affairs, which he did not do, he waived his right to assert the 5th regarding those same questions during his 341 meeting.

The *Connelly* Court also discussed the issue of whether the 5th amendment protected a debtor from turning over property of the estate, and concluded it did not:

> Three bankruptcy courts have addressed the question of whether the debtor may be privileged under the Fifth Amendment from turning over tangible property to the estate. All held that he is not. …[A]n order to turnover property of the estate does not violate a debtor's Fifth Amendment rights, and therefore, immunity is not an issue.

59 B.R. at 443; *citing and quoting In re Crabtree*, 39 B.R. 726 (Bankr. E.D. Tenn. 1984); *In re Devereaux*, 48 B.R. 644 (Bankr. S.D. Cal. 1985); *In re Krisle*, 54 B.R. 330 (Bankr. D. S.C. 1985). Accordingly, the Debtor is obligated to turnover all property of the estate, specifically any

13

remaining R&D monies in his possession, which he has failed to do.

### E. Conclusion

Debtor has an individual chapter 11 case and a business chapter 11, Raymond & Associates LLC, both of which were converted to chapter 7 cases in late 2016. Debtor had from February of 2017 to January of 2018, to prepare, sign, and file accurate and complete conversion schedules and to appear at a 341 meeting of creditors for examination. Though Debtor appeared at two of his eleven scheduled 341 meetings, he failed to appear at the last four scheduled meetings, causing the BA file a motion to compel these actions, which this Court granted. During the pendency of his chapter 11 case, and after it was converted to chapter 7, Debtor has knowingly and fraudulently failed to report the acquisition of the R&D monies in the various amended schedules and Statement of Financial Affairs filed in the chapter 7 case and has failed to deliver or surrender said property to the Trustee. Debtor's conduct during this case is ample grounds to grant the BA the relief he has requested in his Motion for Summary Judgment and to deny Debtor his chapter 7 discharge. Therefore, because Debtor failed to comply with the Bankruptcy Code and has failed to comply with an express order of the Court, this Court hereby finds that the BA's Motion for Summary Judgment is due to be and hereby is GRANTED. Debtor SHALL be DENIED a discharge under 11 U.S.C. § 727(a)(6)(A).

### III. JUDGMENT

Based upon the Findings of Fact and Conclusions of Law set forth herein, the Court hereby enters judgment in favor of the Bankruptcy Administrator on his Complaint, and ORDERS and

DECREES that the Debtor Raymond Laforce is DENIED a discharge in this case.

Dated: October 31, 2018

JERRY C. OLDSHUE, JR.
U.S. BANKRUPTCY JUDGE